UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TINA RANEE TRIGGS,

    Plaintiff,

  v.            Case No. 20-CV-407

WISCONSIN DEPARTMENT
OF CORRECTIONS,

    Defendant.

## ORDER

**1. Background**

Pro se plaintiff Tina Triggs filed a complaint (ECF No. 1) in March 2020 along with a request to proceed in forma pauperis (ECF No. 2). This court granted Triggs's request, screened her complaint pursuant to 28 U.S.C. § 1915(e)(2), and ordered that she file an amended complaint to remedy certain pleading defects. (ECF No. 4.) Triggs filed a first amended complaint in May 2020 (ECF No. 5), which the defendant, the Wisconsin Department of Corrections (DOC), answered (ECF No. 21) and then moved to dismiss in part (ECF No. 22). The court granted the DOC's motion and dismissed Triggs's Wisconsin Fair Employment Act (WFEA) claim and her Anti-Age Discrimination in

Employment Act (ADEA) claim. (ECF No. 32 at 8.) The DOC did not move to dismiss Triggs's Title VII claim. (ECF No. 32 at 8.)

The court subsequently issued a scheduling order, giving the parties until January 4, 2022, to submit amended pleadings. (ECF No. 37.) Triggs filed a second amended complaint on January 4, 2022 (ECF No. 38), which the court screened pursuant to 28 U.S.C. § 1915(e)(2) (ECF No. 40). For a second time, the court dismissed Triggs's WFEA and ADEA claims, leaving only her Title VII claims. (ECF No. 40.) The DOC answered Triggs's second amended complaint on February 3, 2022 (ECF No. 41), and on October 31, 2022, it filed a motion for summary judgment (ECF No. 46), along with proposed findings of fact (ECF No. 48) and accompanying declarations and exhibits (ECF Nos. 49-52). In accordance with Civil Local Rule 56(a)(1)(A), the DOC explained to Triggs in its motion that "[a]ny factual assertion in the declarations (and other admissible proof) submitted or referred to in support of [its] motion will be accepted by the judge as true unless you submit affidavits or declarations or other admissible documentary evidence contradicting such assertion." (ECF No. 46 at 1-2.)

When Triggs missed her deadline to respond to the DOC's summary judgment motion the court gave her additional time, explaining that the failure to meet the new deadline would result in the court accepting as undisputed all facts asserted by the DOC. (ECF No. 53.) On December 30, 2022—the day her response was due—Triggs filed a "Response to Defendant's Proposed Findings of Fact" (ECF No. 54), along with two

notarized emails from coworkers, excerpts from the DOC's Employee Handbook, and Triggs's August 2020 termination letter, all purportedly included as accompanying exhibits (ECF No. 54-1).

Triggs's submissions attempt to refute some of the DOC's proposed findings of fact by purportedly asserting her own contradictory facts. (ECF No. 54 at 1-2.) But her submissions ignore the requirements of Civil Local Rule 56(b)(2). They do not specify which of the DOC's numbered proposed findings of fact are being challenged, do not provide their own proposed findings of fact in numbered paragraphs, and do not include any affidavits, declarations, or other admissible documentary evidence sufficient to contradict any of the DOC's proposed findings of fact or support any of her own assertions. (ECF Nos. 54, 54-1.) Triggs also did not attempt to respond to any of the DOC's legal arguments. (ECF No. 54.)

Under Civil Local Rule 56(b)(4), Triggs's noncompliance with Civil Local Rule 56(b)(2) is grounds for the court to "deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." The court affords leniency to pro se litigants, *see Thomas v. Foster*, 138 F. App'x 822, 823 (7th Cir. 2005), and the court has done so here. (ECF No. 53.) The court also has discretion regarding whether to strictly enforce its local rules. *See Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011). But it is not the court's job to dig through the record in search of evidence to support a party's claim. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991);

*Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006); *Castellano v. Mahin*, No. 17-cv-598, 2018 WL 654451, at *2 (E.D. Wis. Jan. 31, 2018). Accordingly, the court will deem the DOC's proposed findings of fact admitted for purposes of summary judgment.

**2.      Undisputed Facts**

The following facts, unless otherwise noted, are taken from the DOC's proposed findings of fact. (ECF No. 48.) Facts not included in the DOC's proposed findings of fact—but which are necessary to fill certain evidentiary/narrative gaps—are taken from additional documents which the DOC submitted with its motion for summary judgment, such as Triggs's deposition transcript (ECF No. 52-1) and DOC employee declarations (ECF Nos. 49, 50, 51).

Triggs, an African American female, worked for Racine Youthful Correctional Facility from 2006 to 2020. (ECF Nos. 48 at ¶ 1; 47 at 2.) She began her work with Racine Youthful as Correctional Officer and was promoted to Correctional Sergeant in November 2018. (ECF No. 48 at ¶¶ 2-3.) Upon being promoted to Sergeant, Triggs was offered and chose to occupy a vacant first shift post, which "was cleared by the security director." (ECF Nos. 48 at ¶ 13; 52-1 at 9:22-10:8.) First shift at Racine Youthful is from 6:00 a.m. to 2:00 p.m., which hours Triggs, as a single parent, preferred and had worked for approximately eight years as an Officer prior to her promotion to Sergeant. (ECF Nos. 48 at ¶ 87; 52-1 at 9:22-10:8, 12:22-13:5.)

DOC Policy 200:30:502, "Filling a Vacancy," provides the specific procedures that must be followed to fill vacant posts. (ECF No. 48 at ¶ 14.) The policy requires that, when a vacancy occurs for certain positions, including Correctional Sergeant, the job must be posted Monday through Friday and remain posted from the day of the posting plus six full calendar days. (ECF No. 48 at ¶ 18.) The policy also provides a specific selection process, or hierarchy, which must be followed for posted positions, where applicants who meet certain criteria—*e.g.*, seniority, unique skillsets, employees eligible for accommodation, and employees with restoration rights—are given priority, or "signing rights." (ECF No. 48 at ¶¶ 21-24.) Employees who wish to fill a vacant post are required to "bid" for the post. (ECF No. 49 at ¶ 13.) Employees who have been recently promoted and are serving a probationary period in their new position do not have signing rights to bid for posts. (ECF No. 48 at ¶ 25.) After bids are submitted the DOC considers those employees who bid for the post based on the policy criteria, and the most qualified applicant "signs" for the vacant post. (ECF No. 48 at ¶¶ 16-24.)

Steven Johnson served as Warden at Racine Youthful from August 19, 2018, through February 17, 2019. (ECF No. 48 at ¶ 10.) As Warden, Johnson had a duty to investigate and remedy situations where he was aware that DOC policies—including Policy 200:30:502—were being or had been violated. (ECF No. 48 at ¶ 26.) Sometime after Triggs's promotion to Sergeant, Sergeant Devin Bayles—a white male—submitted a complaint to Johnson alleging that Triggs had been improperly placed in a first shift

post that had not been properly posted in accordance with Policy 200:30:502. (ECF Nos. 48 at ¶¶ 13, 27; 52-1 at 13:24-13:25.) Following an investigation, Johnson concluded that the first shift post that Triggs occupied had not been posted properly and that employees with signing rights had not been given the opportunity to bid on the position. (ECF No. 48 at ¶ 27.) Johnson also found that, had the position been posted properly, Triggs would not have had signing rights to bid on it because she was in her probationary period as a recently promoted Sergeant. (ECF No. 48 at ¶ 28.)

In February 2019 Johnson emailed Triggs, informing her of his investigation and conclusions. (ECF No. 48 at ¶¶ 29, 31.) Johnson attached to his email a copy of Policy 200:30:502 and explained that Triggs's current first shift post was a "live post" and that it had not been posted in accordance with Policy 200:30:502. (ECF No. 48 at ¶¶ 30-31.) Johnson gave Triggs three options: (1) she could return to her first shift post as a Correctional Officer; (2) she could remain in her assigned first shift post as Sergeant for six months and sign for an open Sergeant post at the end of those six months; or (3) she could immediately move to one of the second or third shift Sergeant posts which previously had been posted in accordance with Policy 200:30:502 but remained open. (ECF No. 48 at ¶ 32.) Triggs chose to remain in her first shift post as Sergeant for six months and then sign for an open Sergeant post when the six months were up. (ECF No. 48 at ¶ 34.)

On February 14, 2019, Triggs began making inquiries into the proper procedures for filing a discrimination claim. (ECF No. 48 at ¶ 54.) During a March 2019 intake interview Triggs stated that she believed she was experiencing discrimination based on her race and sex and explained that a coworker had complained about her being assigned to a first shift post and that she felt the coworker was bullying her. (ECF No. 48 at ¶ 57.) She also explained that she knew of other employees who had been assigned to posts within the last six months not in accordance with Policy 200:30:502 but who were not being addressed and that she was being singled out. (ECF No. 48 at ¶ 60.)

Following her intake interview Triggs filed an Employee Discrimination Complaint, stating that she was being discriminated against based on her race and sex and that the situation could be resolved by allowing her to remain in her first shift Sergeant post. (ECF Nos. 48 at ¶ 63; 51-4 at 1.) After reviewing Triggs's complaint, new Warden Paul Kemper explained to Triggs in a March 2019 letter that the information from her intake interview and her complaint did not demonstrate a potential violation of DOC directive. (ECF No. 48 at ¶ 66.) Kemper also explained that she could file an internal complaint with the Office of Diversity and Employee Services (ODES)—the division which oversees the DOC's harassment and discrimination complaint process—or an external complaint with either the Wisconsin Department of Workforce Development's Equal Rights Division or the United States Equal Employment Commission (EEOC). (ECF No. 48 at ¶ 68.)

Before filing another complaint Triggs participated in an intake interview with investigators from ODES. (ECF No. 48 at ¶ 77.) During the June 2019 interview Triggs alleged that there had been situations comparable to hers where vacant posts had been filled not in accordance with Policy 200:30:502. (ECF No. 48 at ¶ 78.) Specifically, Triggs alleged that a first shift Movement Control Station (MCS) post, a first shift vacation holiday post, a third shift segregation Sergeant post, and a third shift relief Sergeant post all had been filled without first having been properly posted. (ECF No. 48 at ¶ 79.)

ODES investigated Triggs's allegations but determined that the situations were distinguishable. (ECF No. 48 at ¶ 80.) In each of the situations identified by Triggs the Sergeants had, unlike Triggs, passed their probationary periods and had signing rights. (ECF No. 48 at ¶ 84.) Having concluded its investigation, ODES notified Triggs that her claim did not demonstrate a potential violation of DOC directives. (ECF No. 48 at ¶ 85.)

In August 2019—nearing the end of the six months Triggs had been given to remain in her first shift Sergeant post—new Warden Je'Leslie Taylor (the third warden in the last six months) emailed Triggs to follow-up on the status of her position and provide her with two weeks' advance notice of her assignment to another post. (ECF No. 48 at ¶¶ 35-36.) Taylor explained that Triggs had not yet signed for an alternative post and that there were two Sergeant positions available, a second shift post (2:00 p.m. to 10:00 p.m.) and a third shift post (10:00 p.m. to 6:00 a.m.). (ECF No. 50-5 at ¶ 1.) Taylor further explained that, effective August 11, 2019, if Triggs failed to bid and sign

for another post, she would be moved to the third shift post but would continue to have signing rights. (ECF No. 50-5 at ¶ 1.) Triggs did not bid on any open posts by August 11, 2019, and was moved to the third shift Sergeant post. (ECF Nos. 48 at ¶¶ 41-43, 82.) The first shift Sergeant post was then posted and filled in compliance with Policy 200:30:502. (ECF No. 48 at ¶ 82.)

Rather than begin working the third shift Sergeant post, Triggs began a medical leave of absence, brought on by a combination of stress-inducing factors, both work- and non-work-related. (ECF Nos. 48 at ¶ 86; 52-1 at 17:19-19:6.) Her medical leave of absence lasted over a year, until September 10, 2020, when Warden Taylor terminated Triggs's employment due to her inability to return to work. (ECF No. 48 at ¶ 88.)

3. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable finder of fact could accept the nonmoving party's position and return a verdict in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from that evidence in" favor of the nonmovant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008)); *Del Raso v. United States*, 244 F.3d 567, 570

(7th Cir. 2001). The "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690-91 (7th Cir. 2010)).

**4.     Analysis**

    **4.1.     Non-exhausted and Forfeited Claims**

A plaintiff is required to exhaust her administrative remedies by filing a charge of discrimination with the EEOC before filing a Title VII suit in federal court. *See Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006). The Seventh Circuit Court of Appeals has held that Title VII plaintiffs are limited to bringing in federal court the claims which were included in their EEOC charges:

> [T]he scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC. An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination. This limitation is consistent with the principle of primary jurisdiction in the agency, for it gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts.

*Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992).

Having said that, "[i]n addition to those claims which were previously [included in an EEOC charge], Title VII plaintiffs may also litigate claims which are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'" *Teal v. Potter*, 559 F.3d 687, 691-92 (7th Cir. 2009) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins. Inc.*, 538 F.3d 164, 167 (7th Cir. 1976) (en banc)). "This standard is a liberal one … and is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *Id.* (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

Prior to filing this lawsuit Triggs filed a single charge of discrimination with the EEOC on September 6, 2019. (ECF No. 48 at ¶ 89 (citing ECF No. 52-2).) In her EEOC charge Triggs alleged two claims of discrimination and one claim of retaliation[1] under Title VII: she alleged that she was discriminated against on account of her race and sex when she was removed from her first post Sergeant shift on or around January 25, 2019,

---

[1] Triggs indicated in her discrimination charge filed with the EEOC that she was alleging discrimination based on race, sex, age, and retaliation. (ECF No. 52-2.) Although it is unclear from the face of her discrimination charge which claims she was alleging were race or sex discrimination and which were retaliation, it appears that Triggs's claim relating to her reassignment to the third shift Sergeant post was for retaliation. (ECF No. 52-2.) In her brief description of that claim Triggs stated: "I filed an internal complaint of discrimination around June 1, 2019. On or around August 18, 2019, I was assigned to a third shift post against my wishes." (ECF No. 52-2.) While ambiguous—and Triggs has offered no clarification—the court reads these sentences as suggesting that her assignment to third shift was in retaliation for her filing her internal discrimination complaint.

and reassigned to third shift on or around August 18, 2019, and when she was denied a merit compensation bonus around May 1, 2019; and she alleged that she was retaliated against when she was assigned to the third shift Sergeant post in August 2019 after filing an internal complaint for race and sex discrimination around June 2019. (ECF No. 48 at ¶¶ 90(a)-(c) (citing ECF No. 52-2 at 1).) The EEOC dismissed Triggs's discrimination charge on December 16, 2019, and provided her with a "right to sue letter," giving Triggs 90 days in which to file a lawsuit on the claims alleged in her charge. (ECF No. 48 at ¶ 91 (citing ECF No. 52-3 at 1-2).)

Triggs included in her timely filed, initial complaint in this lawsuit two of the three claims from her EEOC charge: she alleged that she was discriminated against on account of her race and sex when she was removed from her first shift Sergeant position in January 2019 and reassigned to a third shift Sergeant position in August 2019; and she alleged that she was also discriminated against on account of her race and sex when she was denied a merit compensation bonus around May 1, 2019. (ECF No. 1 at 2-3.) Triggs, however, omitted from her complaint the claim that the DOC assigned her to third shift in August 2019 in retaliation for filing an internal complaint for race and sex discrimination around June 2019. (ECF No. 1 at 2-3.) She also omitted the retaliation claim from her amended complaint (ECF No. 5) and her second amended complaint (ECF No. 38).

12

Case 2:20-cv-00407-WED   Filed 02/16/23   Page 12 of 20   Document 57

While Triggs uses the word "retaliation" in all three complaints (ECF Nos. 1 at 2; 5 at 6; 38 at 2, 10), she does not allege in any of the three that the DOC assigned her to third shift in August 2019 in retaliation for her filing an internal complaint around June 2019[2] (ECF Nos. 1, 5, 38). In fact, Triggs does not mention that she filed an internal complaint in June 2019 in any of the three complaints, nor does she allege that her reassignment to third shift was a retaliatory action. (ECF Nos. 1, 5, 38.) While the DOC addresses in its summary judgment motion a purported Title VII retaliation claim relating to Triggs's "reassignment to an open third shift Sergeant position … [as] retaliation for filing internal complaints of discrimination" (ECF No. 47 at 21-23), Triggs does not raise that claim in her second amended complaint (ECF No. 38). And the court will not analyze such a claim as if she had.

And while Triggs alleged in her initial complaint that she was discriminated against on account of her race and sex when she was denied a merit compensation bonus around May 1, 2019 (ECF No. 1 at 2), she omitted that claim from both her amended complaint (ECF No. 5) and her second amended complaint (ECF No. 38). While her second amended complaint alleges for the first time that an inaccurate employee performance evaluation from May 2017 "disqualif[ied] her [from] consideration for the employee merit award," it does not allege that she was also

---

[2] In her most recent complaint Triggs alleges that her medical termination in October 2020 was a "retaliatory act because of [her] complaint filed against the department." (ECF No. 38 at 10.) But Triggs never—at least as far as the court is aware—raised this specific retaliation claim with the EEOC. (ECF No. 52-2 at 1.)

wrongly denied a merit compensation bonus around May 2019. (ECF No. 41-1 at ¶ 17.) Because Triggs failed to include in her second amended complaint her claim that she was discriminated against when she was denied a merit compensation bonus in May 2019, the court need not analyze that claim. *See Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 674 (7th Cir. 2019) ("Generally, '[o]nce an amended pleading is interposed, the original pleading no longer performs any function in the case.'" (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 at 556-57, 559 (1990)))).

Triggs's second amended complaint includes additional claims of race and sex discrimination and retaliation which were not raised in her EEOC charge. She describes how she "received multiple frivolous disciplines," including on one occasion where she and another coworker were disciplined for being late but the other coworker—a white female—was "given an opportunity to make-up her lost time" and eventually "received no discipline." (ECF No. 41-1 at ¶ 8.) She also describes an occasion where she requested "time off to partake in an interview" and had her request denied, while a white male coworker in the "same situation" had his request granted. (ECF No. 41-1 at ¶¶ 12-13.) And she claims that her termination was "a retaliatory act because of the complaint filed against the department." (ECF No. 41-1 at ¶¶ 40-41.) Her second

amended complaint contains claims of unlawful discrimination or retaliation in addition to these.

But Triggs failed to raise any of those claims with the EEOC prior to filing them with this court. Moreover, the court cannot discern any "reasonable relationship" between the claims which Triggs raised in her EEOC charge and the claims she raises for the first time in this court, which are each separate instances of alleged discrimination or retaliation, distinct from and unrelated to the claims Triggs included in her EEOC charge. (ECF Nos. 41-1; 52-2.) As such, only those Title VII claims which Triggs included in her EEOC charge are administratively exhausted, and those claims which Triggs raises for the first time in her most recent complaint are dismissed.

In sum, the analysis to follow is only concerned with the Title VII discrimination claim Triggs raised in her September 2019 EEOC charge *and* in her second amended complaint—namely, that she was discriminated against when she was removed from her first shift Sergeant post around January 2019 and reassigned to a third shift Sergeant post around August 2019. Any claims included in Triggs's second amended complaint in addition to this claim are dismissed as administratively unexhausted.

### 4.2. Title VII Discrimination

Title VII of the Civil Rights Act forbids an employer from, among other things, discriminating against an employee on account of the employee's race or sex "with respect to [the employee's] compensation, terms, conditions, or privileges of

employment." *See* 42 U.S.C. § 2000e–2(a). To survive a motion for summary judgment, the Title VII plaintiff must produce sufficient evidence on which a "reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the … adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). This inquiry "presupposes the existence of an adverse employment action, so the threshold issue [this court] must resolve is whether such an action has even occurred." *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 470 (7th Cir. 2018).

"An adverse employment action is 'some quantitative or qualitative change in the terms or conditions of [the plaintiff's] employment that is more than a mere subjective preference." *Madlock*, 885 F.3d at 470 (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003)). A wide variety of actions might constitute an adverse employment action. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 743-45 (7th Cir. 2002) (discussing various categories of adverse employment actions). But an adverse employment action will commonly involve changes to the plaintiff's "current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Madlock*, 885 F.3d at 470 (quoting *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016)); *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011) (quoting *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003)) (noting that an adverse employment

action may include "a change of work responsibilities, 'depend[ing] on how much of a change, and how disadvantageous a change, took place'"). "In order to succeed, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse.'" *Vance*, 646 F.3d at 473 (quoting *Lapka v. Chertoff*, 517 F.3d 974, 985 (7th Cir. 2008)).

The DOC argues that Triggs "cannot establish that removal from her first shift Sergeant post and reassignment to a third shift Sergeant post was an adverse employment action." (ECF No. 47 at 14.) "Triggs has not alleged, and the facts do not support, that moving [her] from her first shift post reduced her pay or significantly diminished her job responsibilities." (ECF No. 47 at 14.) Triggs does not attempt to address the DOC's argument in her response materials—either through legal argument or evidentiary proffer. (ECF Nos. 54, 54-1.) Rather, she appears to take for granted that her removal from her preferred first shift post and reassignment to third shift qualifies as an adverse employment action because she had been working first shift "for roughly eight years" and the hours suited her as a single parent. (ECF No. 48 at ¶ 87 (citing ECF No. 52-1 at 12:22-13:12).)

That Triggs preferred the first shift to the third shift does not, without more, make her removal from first shift and reassignment to third shift an adverse employment action on which a Title VII discrimination claim can be based. The removal and subsequent reassignment did not come with a diminution in pay, change in

responsibility, or decreased job prospects. Nor did it come with any other sort of material change in working conditions recognized as adverse by the Seventh Circuit. The court accepts as true Triggs's deposition testimony that her "family life problems"[3] meant that third shift "wasn't going to work for [her]." (ECF No. 52-1 at 12:25-13:12.) But, in a Title VII discrimination case where a plaintiff similarly argued that her reassignment from first to second shift effectively forced her resignation because it caused an interference with her family life, the Seventh Circuit held that "[the employer's] decision to change [the employee's] working hours certainly d[id] not rise to the level of an adverse employment action." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001); *see also Hardy v. Floyd Mem'l Hosp.*, 55 F. App'x 367 (7th Cir. 2002) ("[A] change of shift (without any reduction of status or pay) is not an adverse employment action. Title VII does not subject to federal litigation the routine managerial decision to run a business."). Triggs does not address this precedent, nor does she cite any precedent that says otherwise. (ECF Nos. 54, 54-1.) And this court was unable to uncover any caselaw that helps her cause. *But cf. Washington v. Ill. Dep't of Rev.*, 420 F.3d 658, 661-62 (7th Cir. 2005) (finding that an employer's intentional and targeted change to an employee's working hours could be an adverse employment action under narrow circumstances in the retaliation context).

---

[3] Beyond her deposition testimony stating that she is a "single parent" with two teenage daughters, one of which "had run away from home" at the time she was informed that she would be moved from first to third shift, the court could not find—and Triggs does not offer—insight into what Triggs means by "family life problems." (ECF No. 52-1 at 12:22-13:12.)

Moreover, Triggs's reassignment to third shift was not forced on her—the DOC offered her a first shift position, albeit not as a Sergeant. Warden Johnson offered Triggs her previous first shift position as a Correctional Officer. (ECF No. 48 at ¶ 32.) Triggs rejected that option in favor of a temporary, six-month post as a first shift Sergeant, knowing that it was temporary and that, when six months were up, she would have to bid on another post and that a first shift Sergeant post might not be available. (ECF No. 48 at ¶¶ 32, 34.)

Under these circumstances, absent any evidence that cries for a different outcome, construing a reassignment from first to third shift Sergeant as an adverse employment action would be to stretch the meaning of "adverse employment action" too far. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) ("[N]ot everything that makes an employee unhappy is an actionable adverse action…. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." (internal citations and quotations omitted)). As such, the court finds that Triggs's reassignment from first shift Sergeant to third shift Sergeant was not an adverse employment action. The court will therefore grant the DOC summary judgment on Triggs's discrimination claim.

**IT IS THEREFORE ORDERED** that the Wisconsin Department of Corrections' motion for summary judgment (ECF No. 46) is **granted**. Triggs's complaint and this action are dismissed with prejudice. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 16th day of February, 2023.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge